**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2137
_____

CHERNOH TAHA BARRIE,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A097 536 691)
Immigration Judge:  Honorable Mirlande Tadal
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 16, 2010
Before:  AMBRO, HARDIMAN AND STAPLETON, Circuit Judges

(filed: November 29, 2010 )

_____

OPINION
_____

PER CURIAM

        Before us is a petition for review of an order of the Board of Immigration Appeals

("BIA"), denying the Petitioner's motion to reopen his removal proceedings.  We will

grant the petition and remand for further proceedings.

Mohamadou Bilo Barry, a native and citizen of Guinea, attempted to enter the United States in 2007 using a passport with the name Chernoh Taha Barrie.[1] He was placed in removal proceedings because he lacked valid travel documents, and because he sought admission by fraud or willful misrepresentation. He applied for asylum and related relief. Barrie's written claim for relief was based on his allegation that he had been and would be persecuted and/or tortured because he supported an anti-government strike and supported the UPR, a party made up of people of Fula[2] origin. A.R. 283. The application stated that he was detained and beaten, that he was released because a friend bribed one of the officers, but that he then had to go into hiding until he was able to leave the country. Id

In his hearing before the Immigration Judge ("IJ"), Barrie testified that he was not just a supporter of the UPR, but a member. The IJ made an adverse credibility finding on that basis, which the BIA affirmed. This Court denied Barrie's petition for review, with one judge dissenting. Barrie v. Att'y Gen., C.A. No. 08-2988, 2009 WL 2186521 (3d Cir. July 23, 2009).

In January 2010, Barrie filed a counseled motion to reopen, contending that changed circumstances in Guinea warranted reopening of the removal proceedings. Barrie's motion cited five changed circumstances: (1) a new military government in Guinea, which took power in December 2008; (2) a September 28, 2009 event during

---

[1] We will refer to him as "Barrie," the name used in the Administrative Record.

which members of the military regime massacred over 150 political opposition party members and supporters; (3) evidence that members of the Fulani ethnic group had been persecuted by the military and their supporters; (4) additional evidence that Fulani merchants like Barrie had been targeted by the Guinean military; and (5) evidence from his wife that she had been attacked by men in uniform at home and feared for her life. Exhibits included an affidavit by Barrie's attorney, an affidavit from Barrie, a letter and a medical certificate from his wife, a letter from a friend recounting recent attacks against Fulanis, and several news articles.

The BIA found that Barrie's motion to reopen was untimely, as it was not filed within 90 days of the final administrative decision, as required by statute and regulation. A.R. 2, citing Immigration and Nationality Act ("INA") § 240(c)(7)(i) [8 U.S.C. § 1229a(c)(7)(i)]; 8 C.F.R. § 1003.2(c). The BIA recognized that the time requirements do not apply "to a motion to reopen based on changed circumstances arising in the country of nationality if such evidence is material and was not available and could not have been discovered or presented at the previous hearing," but found that Barrie's motion did not qualify under that exception. A.R. 2, citing INA 240(c)(7)(C)(ii) [8 U.S.C. § 1229a(c)(7)(C)(ii)]; 8 C.F.R. § 1003.2(c)(3)(ii). The BIA concluded that Barrie did "not establish his prima facie eligibility for the relief he seeks, so as to warrant

---

[2] The Fula people are apparently interchangeably known as "Fulani" or "Peuhl."

3

untimely reopening of these proceedings." A.R.2. Proceeding pro se, Barrie filed a timely petition for review.

Where the BIA denies a motion to reopen for failure to establish a prima facie case, this Court reviews the BIA's ultimate decision to deny a motion to reopen for abuse of discretion, and reviews underlying findings of fact for substantial evidence.[3] Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir. 2002). The BIA abuses its discretion where the denial of the motion to reopen is arbitrary, irrational, or contrary to law. Id. Where the motion to reopen is based on changed country conditions, we consider whether the movant presented evidence of changed country conditions and whether the movant presented a prima facie case for asylum. Shardar v. Att'y Gen., 503 F.3d 308, 311 (3d Cir. 2007). "To establish a prima facie case for asylum, the alien must produce objective evidence that, when considered together with the evidence of record, shows a reasonable likelihood that he is entitled to relief." Huang, 2010 WL 3489543, at *13.

It is not clear whether the BIA believed that Barrie failed to show changed country conditions, or whether it simply determined that, regardless of whether conditions had changed, Barrie had not presented a prima facie case that he is eligible for asylum. To

---

[3] We recently enforced the BIA's own regulation that forbids it from reviewing an Immigration Judge's findings of facts de novo. Huang v. Att'y Gen., C.A. No. 09-2437, ___ F.3d ___, 2010 WL 3489543, *8 (3d Cir. Sept. 8, 2010); 8 C.F.R. § 1003.1(d)(3)(i). When reviewing an Immigration Judge's decision, the BIA is precluded from finding facts. However, when considering a motion to reopen, the BIA has the responsibility of considering the facts in the first instance. 8 C.F.R. § 1003.2(c)(3)(ii).

the extent that the BIA found that conditions had not materially changed in Guinea, that finding is not supported by substantial evidence. Barrie presented evidence that since the time of his hearing, there had been a military coup, that the military was hostile to people of his ethnic group, and specifically, that members of the military and the gendarmes had massacred and raped scores of people in an incident that a Human Rights Watch report found was at least in part ethnically motivated.

We further hold that the BIA abused its discretion in concluding that Barrie failed to establish a prima facie case for asylum. The BIA rejected much of Barrie's evidence by characterizing it as "vague and generalized." We do not agree with that characterization. The Human Rights Watch report Barrie submitted recounts in detail the killings and brutal rapes instigated by the military at a peaceful opposition rally on September 28, 2009. The article indicates "many of the killers and rapists made ethnically biased comments during the attacks, insulting and appearing to target the Peuhl, the majority ethnicity of the opposition supporters, and claiming that the Peuhl wanted to seize power and needed to be 'taught a lesson.'" A.R. 48. The letter from Barrie's wife states that "the calm did not return at all here since the killings of September 28, 2009 . . . ." A.R. 32. She indicated that she was seriously beaten by men in uniform on the following night, she required medical treatment,[4] and that she and the

---

[4] Barrie submitted a medical certificate indicating that his wife had been treated and released for "Wounds [and] Bruises at the Abdomen, the Back and at the Lumbar Region due to beating." A.R. 37.

children left home to stay with her cousin, because she "fear[ed] being killed by security forces which attack people nightly." Id. Barrie's wife also indicated that Barrie's cousin had been missing since September 28, 2009. Id. We find that this evidence, together with other evidence in the record,[5] shows a reasonable likelihood that Barrie is entitled to relief. We express no opinion as to whether Barrie ultimately will be successful, but we hold that the evidence he presented makes out a prima facie case sufficient to warrant reopening of the removal proceedings.

For the foregoing reasons, we will grant the petition for review and remand for further proceedings.

---

[5] The BIA discounted the evidentiary value of a letter Barrie submitted from a friend that stated in part that opposition party members and supporters "like you have became (sic) the principle (sic) target of the military." A.R. 3, 40. The BIA found that the reliability of the letter was "undermined by its references to [Barrie's] past experiences in Guinea, which we have already deemed not credible." The BIA may properly discount evidence that is related to an alien's previously discredited testimony, if not rehabilitated. However, we believe that Barrie nonetheless submitted sufficient independent evidence to support reopening of proceedings.

6